Thank you, Judge Clifton, and may it please the court. My name is Mark Caldwell. I'm here representing Tomas Esparza this morning on this Social Security disability matter. Taking my clue from the court, I am going to keep track of my own time, but I'm going to try to reserve two minutes for rebuttal, if possible, depending on how many questions I get, I suppose. This case has several issues. The initial issue is whether the agency's determination of a claimant's work capacity, what they call residual functional capacity, is supported by substantial evidence when it is founded only upon the opinion of a doctor who never laid eyes on the claimant, who issued an opinion over a year-and-a-half before the ALJ decision, who did not review over 500 pages of additional records that were submitted in connection with the request for hearing, was unaware of the treating physician's assessments, and his opinion. The issue then becomes whether the ALJ provided the requisite reasons for rejecting the opinion of the longstanding treating physician, Dr. Vanig, and Dr. Vanig treated Mr. Esparza's when he gave assessments in May of 2010 and May of 2011. In both cases, vocational expert testimony was not necessary because the ALJ stated at the hearing, if I accept that evidence, then a finding of disability naturally follows. So what did the ALJ do in terms of Dr. Vanig's opinion? She gave three reasons, but only one of them is defended by the commissioner. In reverse order, she said it was based on only his reported symptoms. The commissioner doesn't defend that rationale. And she said this is an issue reserved to the commissioner. The commissioner doesn't defend that rationale. So the only rationale that remains is the ALJ's statement that the treating physician's opinion was conclusory and inadequately supported by clinical findings. Now, there are a couple problems with that. Well, let me see if I understand what you're telling me. It seems to me that in order to get to the position where the ALJ could have accepted the position that was articulated by the doctor who had not been his treating physician was to somehow make the ALJ's opinion critical reasoning to suggest that the ALJ could give little weight to the opinions of Dr. Vanig, right? I view those as separate issues, Judge. Well, but I guess that's why I stopped to question you just a little bit. Because it seems to me that if they don't, if the ALJ can't give little weight to the opinions of Dr. Vanig, then at that point, he's got to accept the opinions of Dr. Vanig over the opinions of the other expert, even if it's a good opinion or a bad opinion. Would you agree? In other words, the treating physician gets the highest level of deference. That's undoubtedly true. And so in order to get rid of the treating physician's testimony getting the best deference, you've got to have some clear and articulate reason for suggesting we're only going to give it little weight. And that's what it seems to me you're arguing, right? That's correct. And you said something very important. You said clear and convincing reasons. That's why I wanted to say, because it seemed to me there's a basis for us determining it. Okay. So at that point, if this one, I agree with you, frankly, if I can't live with the one thing that you've said the government suggested, then I have to give Dr. Vanig's testimony more deference than any other testimony of any other doctor, correct? I believe so, yes. And the only other place where it seems to me the ALJ made a finding which would undo some evidence that's in the record is the ALJ made a finding that the petitioner's testimony wasn't credible, correct? She did make that finding. And so can, if the petitioner's testimony isn't credible, but I should weigh Dr. Vanig's testimony with heavy weight rather than little weight, can I really credit as true what's being done here and give you benefits? First of all, obviously, I'm not going to concede that the ALJ's credibility determination for the claimant... I appreciate that. I didn't expect you would. I just didn't want to... I'm giving you a hypothetical. Okay. Thank you. I just wanted to make that clear. You would have to assume, which I repeat is a position that the government does not defend, that Dr. Vanig based his assessment to a large extent on the claimant's reported symptoms. There isn't a shred of evidence in this file that would support that speculation. So theoretically, answering your hypothetical question, even if some of the claimant's testimony was not considered credible, that would not undermine the treating physician's opinion unless there was evidence that the treating physician was relying upon just what the claimant told him. And, of course, there's no evidence at all that that exists, and the commissioner isn't contending that that exists, at least in the briefs. Well, the worry that I have here is that, I mean, I'm going to question, if you will, the ALJ's representative here about the credibility determination, but I was saying, supposing I give him the ALJ the credibility determination, I'm not suggesting I agree, but supposing I give it to him, then at that point I've got the treatment of Dr. Vanig, which I think you're adequately representing what the government has suggested, which means to me I don't think they made a very good determination. So then I got Dr. Vanig's testimony that I've got to give weight to, and then I said to him, I see. There are inconsistencies between the mental status exam and the state agency opinions and Dr. Vanig and Esparza, but he could be incredible. If that's so, if there are inconsistencies, then it seems to me that I can't get past step two to give you, if you will, and I'm really focusing on credit as true rule. Right. Because I want you to. I can't get past step two in that situation, and therefore I've got to remand. I'm not sure you wouldn't win on remand, but you want me to give you the whole gift. So what I'm trying to do is understand how I get there. And I think you've already said it. Under the clear and convincing standard, which does apply in this case, because state agency opinions are not substantial evidence standing by themselves, there is not clear and convincing reasons for rejecting Dr. Vanig's opinion, and the ALJ has already said that that opinion established disabling limitations. I don't know if I should try to save my 59 minutes for rebuttal or not. Fifty-nine seconds. Thank you. But let me ask you, Mr. Colvin, because you were on Garrison, obviously, and succeeded in getting the credit as true rule applied there, but Tricler also came out in 2014. Why is your case more like Garrison and less like Tricler in terms of the credit is true? It's much, much more like Garrison and much, much less like Tricler. Tricler was based on an ALJ making no findings whatsoever about a claimant's credibility, making a boiler plate conclusion that the Court has probably seen over and over and over again. The limitations are not consistent with this residual functional capacity determination, which of course I argue in my briefs is putting the cart before the horse, and stopped. Flat out stopped. That isn't what we have here at all. You know, in Tricler there was at least perhaps an inference that the ALJ just blew it. Maybe there were reasons and just didn't do anything. I personally would disagree with the result in Tricler, but that's another matter. The fact of the matter is, though, that case is factually greatly distinguishable from this situation where the ALJ gave reasons both for the treating physician and the claimant's symptom testimony that are just full of holes. And Tricler does not apply here. Garrison applies here. And if the Court wants to let me have some rebuttal time, fine. And if not, thank you for your time. Good morning. May it please the Court, Counsel. Danielle Pettersen for the Commissioner of Social Security in this case. I would like to address a few things that opposing counsel brought up to the Court that I believe are a slight misstatement of what this Court has held previously. First and foremost, counsel stated that a reviewing state agency physician's opinion cannot constitute substantial evidence. This Court clearly disagreed with that in the Thomas case and in the Tanev-Chepin case. The Court has held, this Court has held that the opinion of the treating physician is not well supported, that in that instance the opinion of a reviewing state agency physician, and in this case there were actually two, not just one, can constitute substantial evidence to support the ALJ's decision. Counsel also noted that when Dr. Falberg, who was the first reviewing state agency physician, reviewed the record, that Dr. Vanig's opinion was not yet part of the record, and that is true. However, when Dr. Ostrowski reviewed the record later, and I believe that was in April of 2010, Dr. Vanig's first opinion was in the record, and Dr. Ostrowski nonetheless agreed with Dr. Falberg that the claimant could perform a range of light work. The critical thing here, I think, though, to focus on, and I think, Judge Smith, you hit on this quite nicely, is the credibility. And this case is basically riddled with inconsistencies that the ALJ noted throughout her decision. And there's many inconsistencies that you noted in your brief, but they were not really articulated by the ALJ. I mean, you did a very good job of culling through the record and saying, well, here he said this and there he said that, but that doesn't seem to have been the basis for her opinion down below. I think that the inconsistencies was the basis of the ALJ's decision, Your Honor. I think that what my colleague, Ms. Berry, who wrote the brief in this case did was to give additional examples to this Court of those types of inconsistencies. But the fact that the ALJ specifically cited inconsistencies in the record, and the consideration where this Court is asking whether it can apply the credit as true rule, I think that those inconsistencies are of critical importance here. And the fact that Mr. Esparza throughout the record made very inconsistent statements about, for example, his daily activities, and that is one of the things that the ALJ did discuss, I think is very important. Now, Mr. Esparza tries to tell the Court that those inconsistencies were merely a reflection of waxing and waning symptoms, and that could explain why there are different subjective complaints and different activities at various points. But we have time-specific conflicts in this record that I think I'd like to draw this Court's attention to. For example, the activity of daily living reports come from September of 2009 and March of 2010. And in those reports and in the testimony, Mr. Esparza represents himself as someone who is doing very little. He says he is only supervising his father's care. He says his partner is helping a lot with those things and that he is essentially unable to leave the house most of the time. He paints himself as someone who is very, very sick and unable to assist with his father other than to oversee his care. However, you can contrast that with a report in November of 2009, in that same time period, and this is at page 435, where he tells a consultative psychologist that he's very busy taking care of his father, that he is making his meals, that he is overseeing his blood pressure and other, doing his other, checking his other diagnostic signs. He is going to the store at least once a week and running other errands three times a week, that he is taking his father for daily walks. This is certainly the exact kind of black and white inconsistency that the ALJ was relied to consider. And with respect to the March 2010 activity report, we see that in that same time, March 2010, Mr. Esparza is asking his treating doctor, Dr. Vanig, for work release. He asks him to sign something saying he can return to work, and that's at page 958. So we have two very sharp contrasts, and we can't reasonably say that those are due to fluctuating symptoms when those very stark reports come in the exact same period of time. The ALJ did not stop there, though, and talked about other inconsistencies. For example, there were inconsistencies regarding why Mr. Esparza left his job. In fact, although Mr. Esparza contended that he did not continue working to care for his father as much as he was, there was quite a bit of testimony at the hearing where he at first said he wasn't really doing much for his father, maybe 13 hours, and the ALJ correctly pointed out, well, wait a minute, we have $3,000 of earnings in this third quarter of 2010. That doesn't add up, unless you're making, you know, this ridiculous amount of money per hour. And then plaintiff finally did concede after being questioned that, okay, maybe I was doing more for my father than I said. And it's this kind of withholding information from the ALJ initially and then coming back to it, coupled with these other inconsistencies, that reasonably led the ALJ to find that Mr. Esparza's credibility was at issue and that he wasn't entirely sure he was believing those subjective complaints. Well, I think my colleague specifically asked the question that was most concerning to me. It seemed to me in your briefs you talked about some justifications for the ALJ's determination on, if you will, credibility, but they weren't the same justifications that the ALJ had looked at. You pointed out other things that were different from what the ALJ was really focusing on, and I don't think I can rely on those. So you're telling me the inconsistencies you're now speaking to us about were specifically mentioned by the ALJ? What I'm saying, Your Honor, is that the bases that I'm talking about, the bases that the ALJ relied upon, are there in his decision, in her decision, excuse me, very clearly. She does talk about the inconsistencies. She specifically mentions the activities and why he left work. She specifically talks about the objective evidence conflicting with the subjective complaint. What we're doing is giving this Court additional examples. While the ALJ might not have gone through this 1,000-page record and given this Court every single example, nothing in this Court's law has suggested that the ALJ is required to do that. The ALJ gave specific reasons, specific bases for finding Mr. Esparza not credible, and gave specific reasons for the weight given to Dr. Vanig's opinion. The Commissioner is not suggesting that this Court look beyond those reasons. What this, what the Commissioner is doing is giving this Court additional examples that fall within those reasons. There's no doubt that the ALJ clearly spelled out that she found multiple inconsistencies in the record. That is very clear in the decision. And it is very clear in the decision that the ALJ found that the subjective complaints were out of line with the objective findings of the specialists that we have in this case. Now, Dr. Vanig clearly felt Let me stop you just a little bit, because it seemed to me that the ALJ may have said something about the inconsistencies, but really explaining the basis for why the ALJ said there were inconsistencies, that's where I found the ALJ's opinion lacking. In other words, there were conclusory statements by the ALJ, but the real basis to back up the statements, that's where, in reading the opinion, I was left lurking. And only when the government comes up with those in its own brief do I find then, well, maybe there's something in there. So I guess, are you suggesting that the only thing the ALJ's got to do is just to make a broad statement about inconsistencies, but not cite the basis for that broad statement, and that I am to give that credit? Your Honor, that's not what I'm suggesting. And I think if you read the ALJ's decision as a whole, the ALJ does directly state that he made inconsistencies, inconsistent statements about the reasons he left his job. That's not something that you can infer from the ALJ's decision. That's actually in the ALJ's decision. And the ALJ also specifically said in her decision that the activities that were reported on the activity reports and in the hearing were inconsistent with statements he made to the consultative physician. Now, yes, I have cast additional light on what that was in my brief and here in the Court, but that does not change the fact that that specific reasoning does appear in the ALJ's decision. These ALJs are writing 500 or 600 decisions a year, and this, to be honest with you, in 18 years of practice is one of the most thorough ALJ decisions I have seen. The credibility decision is very lengthy and goes into numerous factors why the outcome was what it was. I would ask this Court, as my time is winding down, to please look carefully at the findings of the experts, of the specialists in this case. Dr. Vanig said that Mr. Esparza can't use his left arm, but there's absolutely no neurological evidence to support that. There are no abnormalities, nothing on diagnostic testing. So when you contrast that with what Mr. Esparza is alleging, I think you will see another inconsistency that is important in this case. And unless the Court has questions, I will simply ask you to affirm the district court's decision and find that the ALJ's decision was supported by substantial evidence. Thank you. Thank you. Mr. Caldwell, you can have one minute, but don't make it more than that. I made the most of my one minute, but thank you for that. I can just talk about this very quickly. You can't make a statement, a broad statement in an ALJ decision and have the commissioner fill it in in the brief. Enough said. It happens all the time. When keeping in mind about the inconsistencies, I forgot to mention something. Keep in mind that this man suffers from encephalopathy, that the MRI showed that his global brain mass was shrunken. And that has a lot to do with how coherent he can be. As to these inconsistencies, I did the best I could in my reply brief by furnishing the Court a side-by-side chart that showed these various reports. And if you look at that, yes, you may be able to spot some inconsistencies, but are you going to be able to spot inconsistencies sufficient to rise to the level of clear and convincing reasons? I don't think so. Thank you. Thank you. We thank both counsel for your helpful arguments. The case just argued is submitted.
judges: Lasnik, Clifton, Smith